462 A.2d 743

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Marilyn JOHNSON.**

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Lemuel HENRY.**

Superior Court of Pennsylvania.

Argued April 16, 1980.

Filed June 24, 1983.

Petition for Allowance of Appeal Denied Nov. 4, 1983.

580

Shad Connelly, Assistant District Attorney, Erie, submitted a brief on behalf of Commonwealth, appellant.

Denise L. Jones, Erie, for Johnson, appellee (at No. 613).

George M. Schroeck, Erie, for Henry, appellee (at No. 614).

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

The Commonwealth appeals from an order granting appellees' motions to suppress physical evidence and appellee Johnson's motion to suppress inculpatory statements. The lower court suppressed the evidence because it found that the search warrant affidavit failed to set forth reasonable cause for a nighttime search. *See* Pa.R.Crim.P. 2003(c). We agree with the lower court that the affidavit was insufficient in that regard. We disagree, however, with its conclusion that the evidence must be suppressed simply because we have found the nighttime search unjustified. Rather, we hold that application of the exclusionary rule would be appropriate only if the search was otherwise found to be constitutionally infirm. Since we cannot determine from the record before us whether the instant search was, in fact, constitutionally infirm, the case is remanded to

the trial court for the consideration of appellees' remaining suppression claims.

## I

We must first determine whether the Commonwealth's appeal is properly before this Court. In *Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983), we held that "[w]hen confronted with a Commonwealth appeal from an order suppressing evidence, we must first determine for ourselves whether the order is appealable—whether it terminates or substantially handicaps the prosecution; and we must make that determination on the basis of the record, and on that basis alone." [1] Applying that test to this case, we conclude that the suppression order is appealable. Appellees are charged with possession of, and possession with intent to deliver, controlled substances. It is apparent from our review of the record that the prosecution of appellees would be substantially handicapped without the controlled substances. As we said in *Commonwealth v. Lapia*, "the Commonwealth cannot prove a defendant's possession of a controlled substance if it cannot prove that it took the substance from the defendant." 311 Pa.Super. at 280, 457 A.2d at 884. Similarly, we find that the Commonwealth's case would also be substantially handicapped without the use of statements made by appellee Johnson and personal items allegedly belonging to appellee Henry.

## II

On February 1, 1979, at approximately 10 p.m., an informant provided police with information that she had seen large amounts of cocaine and marijuana that date at 236 East Seventh Street in Erie, Pennsylvania. On the basis of the informant's information, the police applied for and were issued a nighttime search warrant. At approximately 10:55 p.m., police searched the above premises and seized four pounds of marijuana and two grams each of cocaine and

---

**1.** This case was held pending the disposition of *Commonwealth v. Lapia,* supra.

hashish. Appellee Johnson, who was present at the time of the search, also made several inculpatory statements. In addition, police seized personal items allegedly belonging to appellee Henry. After informations were filed charging appellees with drug offenses, appellees filed motions to suppress evidence on various grounds. As we have stated, the lower court granted the motions to suppress on the basis of one ground raised by both appellees, to wit, that the search warrant affidavit failed to show reasonable cause for a nighttime search.[2]

Pa.R.Crim.P. 2003(c) provides that "[n]o search warrant shall authorize a nighttime search unless the affidavits show reasonable cause for such nighttime search."[3] Interpreting that Rule, this court in *Commonwealth v. Baldwin*, 253 Pa.Super. 1, 5, 384 A.2d 945, 948 (1978) stated that "the affidavit for a warrant authorizing a nighttime search must show both probable cause and some reason why the search cannot wait until morning." The search warrant affidavit in this case provided as follows:[4]

Recieved (sic) information from a confidential, reliable informant who has given information in the past which has been true and accurate, and which has lead (sic) to arrests and convictions. Informant stated that on this date 2–1–79 she personally saw large amounts of Cocain (sic) and Marijuana in the above listed Home, and that it belongs to the above listed subject.

I believe the above information to be true and accurate, and also believe that this warrant is necessary to conduct a lawful and complete search. I also request a night time

**2.** There is no dispute that the 10:55 p.m. search constituted a nighttime search. Pa.R.Crim.P. 2005(e).

**3.** As the comment to Pa.R.Crim.P. 2003(c) makes clear, the "reasonable cause" requirement "highlights the traditional doctrine that nighttime intrusion into a citizen's privacy requires greater justification than an intrusion during normal business hours."

**4.** Although the search warrant was never admitted into evidence, the affidavit portion of the warrant was read into the record by the affiant at the suppression hearing.

search warrant be granted as I believe the aforementioned drugs will be sold by tomorrow.

Thus, the only the information presented to the District Magistrate was that, on February 1, 1979, the informant saw large amounts of controlled substances at 236 East Seventh Street and that the affiant believed that those substances would be sold by the following date.

This Court, in reviewing challenges to nighttime searches, has considered several factors as relevant to establishing reasonable cause pursuant to Pa.R.Crim.P. 2003(c). In *Commonwealth v. Baldwin, supra,* we upheld a nighttime search where the search warrant affidavit stated as reason therefor that defendant had a reputation as a drug dealer, drugs were seen on defendant's premises and a drug sale had been made that same evening after which time the purchaser of those drugs had been arrested and the drugs seized. Particularly important in establishing reasonable cause for the nighttime search was the fact of the purchaser's arrest for "once anyone connected with contraband is apprehended, the possessors of the contraband make every effort to dispose of it immediately." 253 Pa.Super. at 7, 384 A.2d at 949. The fact of an arrest was also found to be significant in upholding a nighttime search in *Commonwealth v. Ehredt,* 255 Pa.Super. 84, 386 A.2d 147 (1978), *reversed on other grounds,* 485 Pa. 191, 401 A.2d 358 (1979). In that case, police made an arrest three hours before the search was executed and were informed by the male arrested that he had stored property stolen during several burglaries in defendant's apartment.

The existence of information that controlled substances were stored at the premises to be searched and were to be moved imminently was the basis for upholding nighttime searches in *Commonwealth v. Moretti,* 280 Pa.Super. 167, 421 A.2d 458 (1980) and *Commonwealth v. Prokopchak,* 279 Pa.Super. 284, 420 A.2d 1335 (1980).

Thus, a nighttime search will be justified where there is information presented in the search warrant affidavit that, absent a nighttime search, there is a danger that

the evidence sought will be disposed of. Here, unlike *Baldwin, supra,* and *Ehredt, supra,* no arrest was made before a search warrant was sought which would have alerted appellees to the fact that they were the subject of a police investigation, thereby prompting them to remove the controlled substances. *See also Commonwealth v. Ryan,* 300 Pa.Super. 156, 446 A.2d 277 (1982) (nighttime search warranted; defendant aware of police investigation). There was, furthermore, no additional information that those substances were to be sold imminently as in *Moretti, supra,* and *Prokopchak, supra.* All that remains is information that controlled substances were seen by the informant on the premises to be searched and the affiant's unsubstantiated belief that those substances would be sold by the next day. We agree with the lower court that this information was insufficient to establish reasonable cause for a nighttime search as required by Pa.R.Crim.P. 2003(c).

### III

This is not the end of our analysis, however. We must next determine whether suppression is always the appropriate remedy where, as here, a nighttime search is found to be improper. For the following reasons, we cannot agree with the lower court's conclusion that suppression is *per se* required for a violation of Pa.R.Crim.P. 2003(c). Nor are we in accord with the court's determination that only exclusion of the evidence will deter the police from conducting improper nighttime searches.

This appears to be a novel question in Pennsylvania and we, therefore, lack any controlling decisional guidance. However, in his dissenting opinion in *Commonwealth v. Ehredt,* 255 Pa.Super. at 96–97, 386 A.2d at 153, Judge Spaeth stated his view that the Commonwealth's failure to establish reasonable cause for a nighttime search, while a violation of Pa.R.Crim.P. 2003(c), did not require suppression of evidence seized during the search in that case since

the warrant was issued on probable cause.[5]   In support of his conclusion, Judge Spaeth relied on our decision in *Commonwealth v. Jones*, 245 Pa.Super. 487, 369 A.2d 733 (1977), where we held that failure to verify the inventory of items seized following a search, as required by Pa.R. Crim.P. 2009(a), would not result in the suppression of evidence absent a rule, promulgated by the Supreme Court, permitting suppression as a sanction for a violation of Pa.R.Crim.P. 2009(a) or a showing that the evidence was obtained in violation of defendant's constitutional rights. Finding neither, the *Jones* court reversed the lower court's suppression order.   Judge Spaeth, in *Commonwealth v. Ehredt, supra,* likened a violation of the inventory requirement of Pa.R.Crim.P. 2009(a) to a violation of Pa.R.Crim.P. 2003(c):

> An order to suppress may be entered in [sic] the defendant's constitutional rights have been violated. However, the failure to verify the inventory was not such a violation.   Neither is the failure to show cause for a nighttime search—as distinguished from showing cause for the search itself.   An order to suppress may also be entered if permitted by a rule of court.   However, there was no rule permitting suppression as a sanction for the failure to verify the inventory.   Neither is there a rule permitting suppression for the failure to show cause for a nighttime search; as in *Jones*, we must leave it to the Supreme Court whether to promulgate such a rule.

255 Pa.Super. at 97, 386 A.2d at 153.   *See also, Commonwealth v. Chandler*, 312 Pa.Super. 1, 458 A.2d 204 (1983) (citing *Commonwealth v. Jones, supra;* no suppression where issuance section on search warrant inadvertently left blank.   *See* Pa.R.Crim.P. 2005).

A similar conclusion was reached by the Pennsylvania Supreme Court in *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979) when it considered the proper remedy to be

**5.**   Since the majority in *Commonwealth v. Ehredt*, supra, found the nighttime search justified, it was unnecessary to reach the question of the application of the exclusionary rule.

applied for a violation of Pa.R.Crim.P. 2008(a) (copy of search warrant and affidavit, and receipt for property seized, to be left with person from whom or from whose premises the property was taken). Finding that noncompliance with the Rule did not mandate suppression of evidence in that case, the Court explained:

A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence, *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979), or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (decided June 5, 1979); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).[12] Experience does not suggest there has been such a widespread and flagrant abuse of rule 2008(a) that would require the fashioning of a *per se* exclusionary rule for its violation. *See e.g. Mapp v. Ohio, supra.* Therefore, the imposition of a sanction requiring the exclusion of evidence that results from a search where there has not been compliance with the rule must depend upon the relationship of the violation to the reliability of the evidence seized. Here, there was probable cause for the entry and search and there is no dispute that the rifle was in fact found on the premises described in the warrant and seized pursuant to that search. Thus, appellant's rights were not prejudiced by the officer's failure to fully comply with the mandates of the rule.

---

[12] A third rationale underpinning the exclusionary rule concerns preserving the integrity of the judicial system. *Mapp v. Ohio*, 367 U.S. 643, 660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *Dunaway v. New York*, 442 U.S. 200, 217–218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979). This concern is appropriate where the police practice, although not widespread, is still particularly reprehensible. The activities of the police officers in the instant case do not fall within that concern.

486 Pa. at 115–116, 404 A.2d at 384–385. *See also, Commonwealth v. Walls,* 255 Pa.Super. 1, 386 A.2d 105 (1978).

On the other hand, in *Commonwealth v. Golden,* 277 Pa.Super. 180, 419 A.2d 721 (1980), we concluded that evidence must be suppressed because of the failure of the police to comply with Pa.R.Crim.P. 2007 (Knock and Announce Rule), absent exigent circumstances therefor. We stated there that "Rule 2007 represents a codification of the announcement rule required by the Fourth Amendment to the United States Constitution." 277 Pa.Super. at 184, 419 A.2d at 723. *Accord Commonwealth v. Wallace,* 293 Pa. Super. 73, 437 A.2d 996 (1981).

Thus, while there is no direct authority regarding the proper remedy to be applied for a violation of Pa.R. Crim.P. 2003(c),[6] our review of those decisions which have considered sanctions to be imposed for analogous violations of the procedural rules lead us to conclude the following: Where a rule represents a codification of Fourth Amendment requirements, e.g., the knock and announce rule, its violation will result in exclusion of evidence. Where, however, the rule goes beyond the requirements of the Fourth Amendment, e.g., verification of inventory rule or rule requiring police to leave a copy of the search warrant and affidavit, its violation will not result in suppression *unless* (1) there is a particular rule mandating suppression, or (2) the defendant's constitutional rights have been otherwise violated. We agree with Judge Spaeth's dissent in *Commonwealth v. Ehredt, supra,* which concludes that a violation of Pa.R.Crim.P. 2003(c) fits into the latter category. In our opinion, that rule represents merely the showing which must be made before a nighttime search may be conducted

---

6. In *Commonwealth v. Baldwin,* 253 Pa.Super. at 5 n. 3, 384 A.2d at 947 n. 3, this Court approved of suppression orders made in two Common Pleas cases after a violation of Pa.R.Crim.P. 2003(c) was found. This approval was dicta, however, since the nighttime search in *Baldwin* was based on reasonable cause. Moreover, as the *Baldwin* court noted, the Common Pleas cases were distinguishable since the basis for their holdings was the fact that the warrants had been issued in the daytime and not executed until nighttime. This was not the case in *Baldwin;* nor is it the case here.

and does not derive from the Fourth Amendment.[7] A technical failure to comply with the rule, therefore, will not result in the exclusion of evidence seized absent a showing that the defendant's constitutional rights have been otherwise violated by the search.[8]

■ Our conclusion that a violation of the nighttime search rule does not *per se* warrant application of the exclusionary rule is supported by the Sixth Circuit Court of Appeals' decision in *United States v. Searp,* 586 F.2d 1117 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979). In that case, the Court found the procedural requirements of F.R.Crim.P. 41(c) violated where the search warrant lacked authorization for a nighttime search and the affidavit contained no supporting facts justifying a need therefor. Nevertheless, the evidence seized was found properly admitted since the search was conducted pursuant to a valid search warrant and otherwise met the requirements of the Fourth Amendment. Furthermore, the violation of F.R.Crim.P. 41(c) was not the result of bad faith on the part of police officers.[9] As the court stated:

7. *But see Gooding v. United States,* 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974) (Marshall, J. dissenting); *United States ex rel. Boyance v. Myers,* 398 F.2d 896 (3rd Cir.1968).

8. We have found no rule promulgated by the Supreme Court which would compel suppression in this case.

9. The *Searp* court would permit suppression for a violation of the procedural rules governing nighttime searches only where (1) there was bad faith conduct on the part of the police, or (2) prejudice to defendant in the sense that the search might not have occurred or would not have been so abusive if the requirements of the rule had been observed. 586 F.2d at 1125. A similar test has been applied by other federal courts which have held that the failure to comply with procedural rules regarding searches does not automatically require suppression. *See, e.g., United States v. Vasser,* 648 F.2d 507 (9th Cir.1980), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981) [tape-recorded affidavit insufficient to meet requirements of F.R.Crim.P. 41(c)(1) ]; *United States v. Marx,* 635 F.2d 436 (5th Cir. 1981) [failure to deliver copy of search warrant in violation of F.R. Crim.P. 41(d) ]; *United States v. Burgard,* 551 F.2d 190 (8th Cir.1977) [failure to return search warrant to federal magistrate as required by F.R.Crim.P. 41(a) ]; *United States v. Dauphinee,* 538 F.2d 1 (1st Cir.

590

> [W]e think it important to differentiate between the *right* to be free from unnecessary and frightening intrusions by the State into our homes in the middle of the night and the *procedures* which have been established to protect that right. In this case the defendant's interests have not been violated, though the procedures were not observed.
>
> This does not mean, of course, that violation of the required procedures is unimportant; indeed the procedures are the only way to prevent infringements of individual rights. Rather, we hold that requiring suppression in all cases would be a remedy out of all proportion to the benefits gained to the end of obtaining justice while preserving individual liberties unimpaired.

586 F.2d at 1122–1123.

We regrettably recognize that our conclusion today may be interpreted as overlooking or even promoting noncompliance with Pa.R.Crim.P. 2003(c). However, we simply cannot agree with the lower court that deterrence of unreasonable nighttime searches can be accomplished only by ordering suppression when a violation of the rule occurs. It is certainly our expectation that local police departments will continue to make efforts to satisfy the requirements of Pa.R.Crim.P. 2003(c), for in many cases failure to do so *will* result in suppression of evidence seized. In this regard, we note the observation made by the Third Circuit Court of Appeals in *United States ex rel. Boyance v. Myers*, 398 F.2d 896, 897 (3rd Cir.1968) (nighttime search invalid where police, who obtained a warrant authorizing a daytime search, instead conducted search at night): "The time of a police search of an occupied family home may be a significant factor in determining whether, in a Fourth Amendment sense, the search is 'unreasonable'."

## I

Our final inquiry is whether suppression is required under the facts of this case. Although appellees' motions to

1976) [noncompliance with F.R.Crim.P. 41(d) requiring search warrant return to list evidence seized].

suppress raised several grounds in support thereof, including that the search warrant was issued on less than probable cause, and a suppression hearing was conducted, the lower court addressed only the challenge to the propriety of the nighttime search. It has not furnished us with a statement of the findings of fact and conclusions of law as required by Pa.R.Crim.P. 323(i). If the appellees' constitutional rights are found to have been violated by the search, the physical evidence and statements should be suppressed. If, on the other hand, those rights were not infringed, the case shall proceed to trial. We, therefore, reverse the lower court's order which suppresses evidence seized during the nighttime search and remand the case for findings of fact and conclusions of law on the question of whether appellees' constitutional rights were otherwise violated by the search.

Order reversed and case remanded with instructions. We do not retain jurisdiction.

HOFFMAN, J., concurs in result.